RCARTERy Judge: ■
This is an appeal of the denial of a rule to modify a custody arrangement. The father appeals the trial court’s denial of his rule to modify the alternating weekly visitation schedule.
FACTS
Dr. Andrew Joseph Voelkel, Jr. (Dr. Voelkel) and Patricia Elzey Voelkel Wren were divorced on September 24, 1991. Both parties have remarried. Four children were born during'the marriage, Christy, Melissa, Andrew and Sarah. The only issue before this Court concerns the custody of the youngest child, Sarah.
Pursuant to a stipulation entered by the parties, a judgment awarding joint custody, signed on September 1, 1992, designated Dr. Voelkel as primary domiciliary parent and designated an alternating weekly visitation schedule ' that would run from Monday through Sunday.
On July 15,1996, Dr. Voelkel filed a rule to modify, custody seeking to have the previous custody award set aside and allow him custody of Sarah, with Mrs. Wren having visitation every other weekend.[2] Dr. Voelkel alleged Mrs. Wren was not allowing Sarah to participate in extracurricular activities and was “too busy” to take care of Sarah. Dr. Voelkel’s rule claimed he. could provide a more stable environment for his daughter.
On September 24, 1996, Mrs. Wren filed her own rule to change custody, claiming there had been a change in circumstances since the prior custody award and that the weekly visitation schedule was not in Sarah’s best interest and that she could provide a better home. The trial court heard both rules on February 28, 1997, and rendered a judgment on March- 7, 1997, which was signed on April 1, 1997, denying both rules. However, the trial court did change the prior custody award to remove the provision of the September 1, 1992 judgment so as not to prohibit Sarah’s overnight visitation with other relatives. ■
|oDr. Voelkel appeals the judgment of the trial court on the basis the trial court “completely disregarded” the testimony of witnesses who testified that modifying the visitation would be in the child’s best interests. Dr. Voelkel also claimed there was clear and convincing evidence at trial which established a modification of visitation would best serve Sarah’s interests.
DISCUSSION
In Evans v. Lungrin, 97-0541, 97-0577, pp. 12-13 '(La.2/6/98); 708 So.2d 731, the Louisiana Supreme Court recently addressed the burden of proof in modifying custody decisions:[3]
[T]he paramount consideration in any determination of child custody is the best interest of the child. ■ La. C.C. art. 131. However, in actions to change custody decisions rendered in considered decrees,- an additional jurisprudential requirement is imposed. Hensgens v. Hensgens, 94-1200 (La.App. 3 Cir. 3/15/95); 653 So.2d 48, unit denied, 95-1488 (La.9/22/95); 660 So.2d 478. A considered decree is an award of permanent custody in which the trial court receives evidence of parental fitness to exercise care, custody, and control of ehil- *635 dren. Hensgens, 653 So.2d at 52. When a trial court has made a considered decree of permanent custody, the party seeking a change bears a heavy burden of proving that the continuation of the present custody is “so deletious (sic) to the child as to justify a modification of the custody decree,” or of proving by “clear and convincing evidence that the harm likely to be caused by the change of environment is substantially outweighed by its advantages to the child.” Bergeron v. Bergeron, 492 So.2d 1193, 1200 , (La.1986), reh’g denied (Sept. 11, 1986).
However, in cases where the original custody decree is a stipulated judgment, such as when the parties consent to a custodial arrangement, and no evidence of parental fitness is taken, the heavy burden of proof enunciated in Bergeron is inapplicable. Hensgens, 653 So.2d at 52. Instead, where the original custody decree is a stipulated judgment, the party seeking modification must prove (1) that there has been a material change of circumstances since the original custody decree was entered, and (2) that the proposed modification is in the best interest of the child. Hensgens, 653 So.2d at 52.
Every child custody case must be considered within its peculiar set of facts. A trial court’s determination of. custody is entitled to great weight and will be overturned on appeal only when there is a clear abuse of discretion. Scott v. Scott, 95-0816, p. 4 (La. App. 1st Cir. 12/15/95); 665 So.2d 760, 763, unit denied, 96-0181 (La.2/2/96); 666 So.2d 1106.
|4In the present case, the original custody award regarding the alternating weekly custody of Sarah was entered into by stipulation of the parties. Thus, Dr. Voelkel’s burden of proof was to prove a change in circumstances materially affecting the welfare of the child since the original decree and that the modification proposed is in the best interest of the child.
The evidence adduced at trial indicated Sarah was a seven-year-old in the first grade. Although she had repeated kindergarten, her report card at the time of trial indicated she was an “A” student. Sidney Caldwell, Sarah’s first grade teacher, testified that her homework was regularly completed, and her discipline had '- steadily improved over the school year.'
The trial court also heard.evidence regarding Sarah’s participation in extracurricular activities. Jane Catherine Mills, Sarah’s choir teacher, testified Sarah only came to choir practice every other week, and that Mrs. Wren never brought her. However, Mrs. Wren testified she was unaware Dr. Voelkel had enrolled Sarah in the choir. Mrs. Wren refuted Dr. Voelkel’s allegations that she was “too busy” to take care of Sarah by explaining she picks up her daughter at school during her weeks of visitation at 3:15 p.m., assists Sarah with her homework, and takes her to gymnastics. The testimony at trial did reveal that there was a difference of opinion between the parents regarding how much' time their seven-year-old daughter should spend in extracurricular activities. We note that although the parents had differing views, there was no evidence to indicate whether Sarah would be harmed by only participating in one extracurricular activity as opposed to, three.
Mrs. Wren further testified she had hot gone to recent parent-teacher conferences for Sarah because she did not receive a notice. Mrs. Wren indicated she was under the impression such conferences were voluntary and not mandatory if the student was not having any problems in school.
Dr. John Paul Pratt, a psychiatrist, who was appointed-by, the court as an independent health professional in the 1992 .custody rule, recommended the weekly ^custody arrangement be changed.[4] However, Dr. Pratt was not appointed by the court for the modification rule at issue and he admitted he had not met with Mrs. Wren prior to making that recommendation.’ Dr. Pratt did indicate he found Sarah did not suffer from any- self-esteem problems.
*636 Judith Kopfler, a hcensed professional counselor, testified that the constant legal battle was deleterious to the continued stability of the child. Her observations of Sarah revealed an impression that Sarah was a well-adjusted child. She recommended the visitation remain the same. Melva Cox, a licensed clinical social worker, also recommended Sarah be domiciled with her father. The basis of Cox’s recommendation was interviews with Sarah and Dr. Voelkel; however, Cox admitted she had not met with Mrs. Wren in making her recommendation; In the trial court’s reasons for judgment, the trial court noted that all of the health care professionals who testified found Sarah to be very bright, happy and loving. Further, none of these professionals identified any behavioral or personality problems.
Dr. Voelkel attempted to present Mrs. Wren’s approach to parenting as possibly harmful to Sarah by using the fact that the parties’ eldest two daughters had not completed their education and had possible alcohol and chemical dependency problems. However, there was no evidence introduced at the hearing that these children’s, problems were the result of Mrs. Wren’s actions.
After reviewing the record in its entirety, we cannot find any abuse of discretion by the trial court. We affirm the decision of the trial court leaving the weekly visitation arrangement intact. We decline to address the •issue Dr. Voelkel has raised regarding the trial court’s failure to award a two week visitation period in the summer for the purposes of family vacation. We direct the parties’ attention to the trial court’s reasons for judgment wherein the court admonished both parents to work together in the best interest of the child and to attempt to resolve their differences between themselves without court interference, and urged such arrangements can be resolved without court interference.
IsCONCLUSION
We find there was no abuse of discretion in the trial court’s failure to modify the existing custody arrangement. The decision of the trial court is affirmed with all costs of the appeal assessed to Dr. Andrew Joseph Voelk-el.
AFFIRMED.
FITZSIMMONS, J., concurs and assigns reasons.

. The holiday visitation schedule is not at issue and will not be addressed. Dr. Voelkel assigned as error the trial court's order of vacation scheduled; however, the specification of error was not briefed. It is considered abandoned pursuant to Louisiana Rules of Court, Uniform Rule 2-12.4.

.Under the particular facts of Evans v. Lungrin, wherein the parents were alternating physical custody every four months between different states, the supreme court determined splitting physical custody was not in the best interest of the child.

. The record reflects that although Dr. Pratt was appointed by the court to evaluate the Voelkels, the weekly arrangement was entered into by stipulation.